**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHARLES ANDERSSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> 27 LIVE, LLC, and JOHN TASIOPOULOS, ) <br> an individual, ) <br> ) <br> Defendants. ) | Case No. 16-CV-7806 |

**COMPLAINT**

Plaintiff, Charles Andersson, through his attorney David J. Zagar, files this complaint against 27 Live, LLC, a corporation, and John Tasiopoulos, an individual, (collectively "Defendants" or as stated individually) stating as follows:

**INTRODUCTION**

1. The federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL") are remedial statutes designed to ensure that employees who are suffered or permitted to work for an employer are paid at least the federal and state minimum wage rate for all hours worked, and overtime wages for hours worked in excess of 40 hours in individual work weeks.

2. To avoid these obligations, 27 Live, LLC and John Tasiopoulos have created a business model in which they hire employees with the promise of a certain salary, but pay them much less, even below the federal and state minimum wage.

3. 27 Live, a restaurant, bar, and live music venue, owned, operated, and managed by John Tasiopoulos, with it's principal place of business in Evanston, Illinois, County of Cook, enticed Plaintiff with the prospect of being executive chef at the restaurant, in exchange for a salary of $50,000.00 per year.

4. 27 Live, LLC and John Tasiopoulos' enticement to Plaintiff contained false and misleading promises as detailed more fully below.

5. Despite the promise to pay Plaintiff a $50,000.00 per year salary, Defendants have actually paid Plaintiff roughly $15,000.00 per year, which falls below both the Federal and State minimum wage.

## NATURE OF THE CASE

6. This lawsuit arises under the FLSA, the IMWL, the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IWPCA"), and under common law, for Defendants' 1) failure to pay Plaintiff minimum wages for all time worked, in violation of the FLSA and the IMWL; 2) failure to pay Plaintiff overtime wages for all hours worked over forty (40) in individual workweeks in violation of the FLSA and the IMWL; and 3) failure to pay Plaintiff for all time worked at a rate agreed to by the Parties under the IWPCA.

7. Plaintiff also brings an Illinois common law claim for Fraud in the Inducement for Defendants' systemic misrepresentation to Plaintiff, including the promise of a specific salary to Plaintiff, and an Illinois common law claim for Breach of Contract, or, alternatively, Unjust Enrichment, for Plaintiff's conferred benefit upon Defendants, which he was not properly compensated, and to which Plaintiff received a detriment.

8. Plaintiff further alleges that Defendants' failure to pay the regular and overtime wages was willful.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331, arising under 29 U.S.C. § 216(b). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this judicial district as the facts and events giving rise to Plaintiff's claims occurred in this judicial district, and Defendants maintain offices and transact business within this jurisdiction.

## PARTIES

11. During the relevant time period, Plaintiff Charles Andersson:

    a. has resided in the state of Illinois and within this judicial district;

    b. has handled goods that moved in interstate commerce; and

    c. has been an employee of Defendants as defined by the FLSA, the IMWL, and the IWPCA.

12. During the relevant time period, Defendant 27 Live, LLC:

    a. has been a corporation organized under the laws of the State of Illinois with it's principal place of business in Evanston, Illinois;

    b. has conducted business within this judicial district;

    c. has been an "enterprise" as defined by Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and is an "enterprise" engaged in commerce, or in the production of goods for commerce, within the meaning of Section 3(s)(1)(A);

    d. has had two or more employees that have handled goods that have moved in interstate commerce;

    e. has jointly been Plaintiff's "employer," as that term is defined by the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c), and the IWPCA, 820 ILCS 115/1 *et seq*.

13. During the relevant time period, Defendant John Tasiopoulos:

    a. has been the owner and manager of 27 Live, LLC;

      b. was responsible for hiring and firing employees, setting workweek schedules, and paying employees at 27 Live, LLC;

      c. has been Plaintiffs' "employer," as that term is defined by the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c), and the IWPCA, 820 ILCS 115/1 *et seq*.

## FACTUAL BACKGROUND

14. Plaintiff incorporates and re-alleges paragraphs 1 though 13 as though set forth herein.

15. On or about July 1, 2013, Plaintiff was hired by Defendants to work as executive chef at Defendants' business, 27 Live.

16. Defendants orally promised to pay Plaintiff an annual salary of $50,000.00.

17. From 2009-2010, prior to working at 27 Live, Plaintiff had previously held the position of Executive Chef at the Chicago fine-dining restaurant called District, at an annual salary of $50,000.00.

18. Prior to working for 27 Live, in the spring of 2011, Plaintiff worked at Sysco Chicago, LLC, a large marketer and distributor of food service products, at an annual salary of $62,000.00.

19. Although not a position in Plaintiff's desired trade (the culinary field), the higher salary from Sysco was of importance to Plaintiff at the time.

20. Worried about the fact that he was no longer in the culinary world, and wanting to advance his career, Plaintiff accepted the job from Defendants at 27 Live, despite the fact that he would take a salary decrease of over $12,000.00 per year.

21. Defendant Tasiopoulos verbally hired Plaintiff on or about July 1, 2013, to work as executive chef at 27 Live.

22. Plaintiff was never paid regularly by Defendants.

23. Instead, Defendant Tasiopoulos told Plaintiff that he would not start paying him until the restaurant passed certain health inspections and was officially open for business.

24. However, after about two weeks, on or about July 14, 2013, Defendant Tasiopoulos verbally reassured Plaintiff that once the restaurant passed the health inspections and was officially open for business, Plaintiff would be paid back wages starting from the beginning of July 2013.

25. The inspections were expected to take 2 to 3 weeks, but in fact took approximately 2 months.

26. During the entire first three months, Plaintiff was working in the kitchen as executive chef without any compensation.

27. During the entire first three months, Plaintiff created and prepared dishes for tasting by Defendant Tasiopoulos, in order for Defendants to decide which items would be on the opening menu.

28. During the entire first three months, Defendant Tasiopoulos set Plaintiff's work schedule, defined Plaintiff's work duties, and otherwise supervised and managed the work that Plaintiff did for 27 Live.

29. After approximately four weeks had passed, Plaintiff again asked Defendant Tasiopoulos why he wasn't being paid.

30. Defendant Tasiopoulos again promised Plaintiff that Plaintiff would be fully compensated for all of his work, including back pay to July 2013, once the restaurant was showing a profit.

31. On October 3, 2013, 27 Live formally opened for business.

32. On October 3, 2013, Plaintiff reminded Defendant Tasiopoulos that he was owed back pay from July 2013, and full pay going forward.

33. Instead of paying Plaintiff in full for back wages, and the agreed salary rate of $50,000.00 annually, Defendants sporadically paid Plaintiff, at most, two times per month, each time on random dates. No deductions were withheld from these payments by Defendants.

34. Later in October of 2013, Plaintiff again approached Defendants and demanded his full back pay, and proper payment going forward, at the agreed upon salary rate of $50,000.00 per year.

35. Plaintiff continued working for Defendant Tasiopoulos and 27 Live for fifteen (15) months.

36. On or about October 21, 2014, Plaintiff left his position, partially because he was verbally humiliated by Defendant Tasiopoulos in front of other employees, but mainly because he was not being paid the agreed upon salary, and Plaintiff couldn't afford his living expenses.

37. From approximately July 1, 2013, to October 21, 2014 (the "Relevant Period"), Plaintiff worked, at a minimum, 50 hours per week, but usually worked between 60 and 70 hours per week.

38. To Plaintiff, being an executive chef at a new fine-dining restaurant with the opportunity to build the menu with his own creations was, and still is, his "dream job."

39. Plaintiff held on to this "dream job" relationship with Defendants for 15 months, continuing to trust in Defendant Tasiopoulos' honesty.

40. During the Relevant Period, although Plaintiff had continuously asked Defendant Tasiopoulos for his full pay and salaried executive chef status, Plaintiff continued to work for less based on repeated assurances from Defendant Tasiopoulos.

41. During the Relevant Period, Defendant Tasiopoulos had complete control over where and when Plaintiff worked.

42. During the Relevant Period, Plaintiff regularly and customarily, at the specific instructions and demand of Defendants, actually performed work for Defendants in excess of forty (40) hours per week.

43. Plaintiff performed work for Defendants as an express condition of his continued employment.

44. Plaintiff regularly worked more than forty (40) hours per week and was never paid any amount of overtime wages.

45. Plaintiff's job duties were directly assigned to him by Defendant Tasiopoulos.

46. Plaintiff did not have to supply his own tools and equipment in connection with his work for Defendants.

47. Plaintiff was required to report to work for Defendants at certain times set by Defendants.

48. Plaintiff could not set his own work hours for Defendants; rather, that was established and mandated by Defendant Tasiopoulos.

49. Defendant Tasiopoulos managed, supervised, established, and administered the terms and conditions of Plaintiff's employment.

50. Defendant Tasiopoulos participated in and approved of the unlawful pay practices of the corporate Defendant 27 Live, LLC.

51. Defendant Tasiopoulos had the power and authority to discipline Plaintiff.

52. Defendant Tasiopoulos hired Plaintiff.

53. Defendants never obtained legal advice or counsel regarding their regular wage and overtime pay practice and policies.

54. Defendant 27 Live never kept any corporate records or documents, or a corporate book.

55. Defendant 27 Live never held any meetings of shareholders.

56. During the Relevant Period, Defendant Tasiopoulos was the sole governing and dominating personality of the business enterprise 27 Live.

57. During the Relevant Period, Defendants never kept any employment records.

58. During the Relevant Period, Defendants never had any signage or posters regarding either the Illinois Minimum Wage or the Federal Minimum Wage posted at the business enterprise, 27 Live, LLC.

59. Plaintiff was, at all times, treated as an employee by Defendants.

60. As it stands, Plaintiff is owed a base rate of pay of $19,000.00 for the 2013 year, and $31,023 for the 2014 year, for a total of $50,023.00, plus overtime wages.

## COUNT I
## Violation of the FLSA – Minimum Wages

61. Plaintiff incorporates and re-alleges paragraphs 1 though 60 as though set forth herein.

62. This Count arises from Defendants' willful violation of the FLSA for Defendants' failure to pay Plaintiff for all time worked, which resulted in being paid less than the federally required minimum wage.

63. Plaintiff was directed to work by Defendants, and did in fact work, but was not compensated at least at the federal minimum wage rate for all time worked.

64. Plaintiff was entitled to be compensated at the federal minimum wage rate pursuant to the FLSA.

65. Defendants violated the FLSA by failing to compensate Plaintiff at least at the federal minimum wage rate for all time worked.

66. Defendants' violations of the minimum wage provision of the FLSA were willful.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A. A judgment in the amount of the difference between the federally-mandated minimum wage rate and the hourly wages actually paid to Plaintiff;

B. Liquidated damages in the amount equal to the unpaid minimum wages;

C. Interest on all back-wages owed;

D. That the Court declare that Defendants violated the FLSA;

E. That the Court enjoin Defendants from violating the FLSA;

F. Reasonable attorney's fees and costs of this action as provided by the FLSA; and

G. Such other and further relief that this Honorable Court deems appropriate.

## COUNT II
### Violation of the FLSA – Overtime Wages

67. Plaintiff incorporates and re-alleges paragraphs 1 through 66 as though set forth herein.

68. This Count arises from Defendants' violation of the FLSA for Defendants' failure to pay Plaintiff one and a half times their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks.

69. Defendants directed Plaintiff to work, and Plaintiff did in fact work, in excess of forty (40) hours in individual work weeks during the Relevant Period.

70. Plaintiff was not exempt from the overtime provisions of the FLSA.

71. Plaintiff was entitled to be paid overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

72. Defendants did not pay Plaintiff overtime wages for all time worked in excess of forth (40) hours in individual work weeks.

9

73. Defendants' failure to pay Plaintiff overtime wages for all time worked in excess of forty (40) hours worked in individual work weeks was a violation of the FLSA.

74. Defendants' violations of the overtime provisions of the FLSA were willful.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A. A judgment in the amount of unpaid overtime wages for all time Plaintiff worked in excess of forty (40) hours in individual work weeks;

B. Liquidated damages in the amount equal to the unpaid minimum wages;

C. Interest on all back-wages owed;

D. That the Court declare that Defendants violated the FLSA;

E. That the Court enjoin Defendants from violating the FLSA;

F. Reasonable attorney's fees and costs of this action as provided by the FLSA; and

G. Such other and further relief that this Honorable Court deems appropriate.

## COUNT III
### Violation of the IMWL – Minimum Wages

75. Plaintiff incorporates and re-alleges paragraphs 1 through 74 as though set forth herein.

76. This Count arises from Defendants' violation of the IMWL for Defendants' failure to pay Plaintiff at least the Illinois-mandated minimum wages for all time worked in individual work weeks.

77. Plaintiff was directed to work by Defendants, and did in fact work, but was not compensated at least at the Illinois minimum wage rate for all time worked during the Relevant Period.

78. Pursuant to 820 ILCS 105/4, Plaintiff was entitled to be compensated at least the then applicable Illinois-mandated minimum wage rate for all time worked.

79. Defendants violated the IMWL by failing to compensate Plaintiff at least the Illinois-mandated minimum wage rate for all time worked.

80. Defendants' violation of the IMWL was willful.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A. A judgment in the amount of all minimum wages due to Plaintiff as provided by the IMWL;

B. Statutory damages for Plaintiff pursuant to the formula set forth in 820 ILCS 105/12(a);

C. Interest on all back-wages owed;

D. That the Court declare that Defendants violated the IMWL;

E. That the Court enjoin Defendants from violating the IMWL;

F. Reasonable attorney's fees and costs of this action as provided by the IMWL, 820 ILCS 105/1 *et. seq.*; and

G. Such other and further relief that this Honorable Court deems appropriate.

### COUNT IV
### Violation of the IMWL – Overtime Wages

81. Plaintiff incorporates and re-alleges paragraphs 1 through 80 as though set forth herein.

82. This Count arises from Defendants' violation of the IMWL for Defendants' failure to pay Plaintiff the overtime wages for all time worked in excess of forty (40) hours in individual work weeks during the Relevant Period.

83. Defendants directed Plaintiff to work, and Plaintiff did in fact work, in excess of forty (40) hours in individual work weeks during the Relevant Period.

84. Plaintiff was not exempt from the overtime provision of the IMWL.

85. Plaintiff was entitled to be paid overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

86. Defendants did not pay Plaintiff overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

87. Defendants' failure to pay Plaintiff for all time worked in excess of forty (40) hours worked in individual work weeks was a violation of the IMWL.

88. Defendants' violation of the overtime provision of the IMWL was willful.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A. A judgment in the amount of unpaid overtime wages for Plaintiff as provided by the IMWL;

B. Statutory damages for Plaintiff pursuant to the formula set forth in 820 ILCS 105/12(a);

C. Interest on all back-wages owed;

D. That the Court declare that Defendants violated the IMWL;

E. That the Court enjoin Defendants from violating the IMWL;

F. Reasonable attorney's fees and costs of this action as provided by the IMWL, 820 ILCS 105/1 *et. seq.*; and

G. Such other and further relief that this Honorable Court deems appropriate.

## COUNT V
### Violation of the Illinois Wage Payment and Collection Act – Unpaid Wages

89. Plaintiff incorporates and re-alleges paragraphs 1 through 88 as though set forth herein.

90. This Count arises from Defendants' violation of the IWPCA for their failure to pay Plaintiff wages earned for all time worked at the rate agreed-upon rate of $50,000.00 as promised by Defendants.

91. During the course of his employment with Defendants, Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked.

92. Defendants had a practice of not paying Plaintiff all compensation at the rate agreed to by the Parties.

93. Defendants agreed to pay Plaintiff $50,000.00 per year.

94. Plaintiff was entitled to be paid for all time worked at the rate agreed to by the parties.

95. Defendants' failure to pay Plaintiff for all time worked at the agreed rate violated the IWPCA.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A. A judgment in the amount of all back wages due to Plaintiff as provided by the IWPCA;

B. Statutory damages for Plaintiff provided by the IWPCA;

C. Interest on all back-wages owed;

D. That the Court declare that Defendants violated the IWPCA;

E. That the Court enjoin Defendants from violating the IWPCA;

F. Reasonable attorney's fees and costs of this action as provided by the IWPCA; and

G. Such other and further relief that this Honorable Court deems appropriate.

## COUNT VI
### Fraud in the Inducement

96. Plaintiff incorporates and re-alleges paragraphs 1 through 95 as though set forth herein.

97. This Count arises form Defendants' false guarantees of the amount of monthly income Plaintiff would receive.

98. Prior to Plaintiff agreeing to work for Defendants, Defendants told Plaintiff that Plaintiff would be compensated at a rate of $50,000.00 per year.

99. At the time, Defendants made this false statement of material fact, and Defendants knew the statement was false.

100. Defendants made these false statements of material fact with the intent of inducing Plaintiff to act, namely to quit his current job and come work for Defendants instead, with the promise of a salary of $50,000.00.

101. Plaintiff reasonably relied upon the truth of Defendants' statements.

102. Plaintiff took a $12,000.00 per year pay decrease from his job at Sysco, to come work for Defendants, based on Defendants' assurance of a salaried executive chef position at 27 Live, and an annual salary of $50,000.00.

103. As a result of Defendants' false statements of material fact, Plaintiff suffered monetary damages, including, but not limited to lost wages and benefits.

104. Plaintiff is entitled to receive the amount Defendants promised to pay Plaintiff which induced him to work for Defendants.

105. Plaintiff is entitled to receive the difference in the amount of his salary decrease from Sysco, and the amount actually received from Defendants.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

- A. A judgment in the amount of all back wages due to Plaintiff as agreed by the parties;
- B. A judgment in the amount of the difference in Plaintiff's previous salary ($62,000.00) and what Defendants actually paid Plaintiff;
- C. Interest on all back-wages and amounts owed;
- D. Reasonable attorney's fees and costs of this action; and

14

E.  Such other and further relief that this Honorable Court deems appropriate.

## COUNT VII
## Breach of Contract

106. Plaintiff incorporates and re-alleges paragraphs 1 through 105 as though set forth herein.

107. Defendants orally agreed to pay Plaintiff $50,000.00 in exchange for Plaintiff working as an executive chef at Defendants' restaurant, 27 Live.

108. Plaintiff agreed to work as executive chef at Defendants' restaurant, and did in fact begin and perform work for a period of fifteen (15) months.

109. Plaintiff performed all conditions and work required of him under the oral employment contract.

110. Defendants did not pay Plaintiff the agreed upon salary of $50,000.00, despite Plaintiff's performance under the agreement.

111. As a result, Plaintiff has been damaged by way of lost wages not paid to him.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A.  A judgment in the amount of the difference between what Defendants agreed to pay Plaintiff for his services, and what Defendants actually paid Plaintiff for his services;

B.  Interest on all back-wages and amounts owed;

C.  Reasonable attorney's fees and costs of this action; and

D.  Such other and further relief that this Honorable Court deems appropriate.

## COUNT VIII
## UNJUST ENRICHMENT

112. Plaintiff incorporates and re-alleges paragraphs 1 through 111 as though set forth herein.

113. Plaintiffs bring this Count in the alternative.

114. Defendants agreed to pay Plaintiff a salary of $50,000.00 to work as executive chef at Defendants' restaurant, 27 Live.

115. Plaintiff took a $12,000.00 per year pay decrease from his previous job at Sysco, in order to work for Defendants, because of the promise of being paid a $50,000.00 per year salary and have status as an executive chef.

116. Plaintiff performed all the duties requested and required of him by Defendants pursuant to the verbal employment agreement.

117. Defendants did not pay Plaintiff $50,000.00 per year in exchange for Plaintiff's services.

118. Defendants have received a benefit from Plaintiff's work as executive chef.

119. Plaintiff has suffered a detriment, namely, not being paid what was promised for the services rendered.

120. Plaintiff received an additional detriment, namely, taking a $12,000.00 per year pay cut from his previous jot at Sysco, to work for Defendants.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A. A judgment in the amount of the difference between what Defendants agreed to pay Plaintiff for his services, and what Defendants actually paid Plaintiff for his services;

B. A judgment in the amount of the value of services Plaintiff conferred to Defendants;

C. Interest on all back-wages and amounts owed;

D. Reasonable attorney's fees and costs of this action; and

E. Such other and further relief that this Honorable Court deems appropriate.


Dated: August 2, 2016

                                        Respectfully submitted,

                                        **CHARLES ANDERSSON**

                                        By: ___*/s/ David J. Zagar*_____
                                                David J. Zagar

David J. Zagar
2545 N. Milwaukee Ave. #2
Chicago, IL 60647
Ph: 231-670-6769
ARDC # 6307382

**ATTORNEY FOR PLAINTIFF**